FILED
2012 Apr-23  PM 12:53
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **PATRICIA DIANNE ARGO,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:11-cv-2265-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Patricia Dianne Argo ("Argo") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision—which has become the decision of the Commissioner—is supported by substantial evidence, and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Argo filed her application for Title XVI Supplemental Security Insurance ("SSI") and Title II Disability Insurance Benefits ("DIB") on January 7, 2008 (R. 87-88), originally alleging a disability onset date of May 15, 2004 but later

amending this date to November 2, 2007 (R. 80), from "fibromyalgia, scoliosis, carpal tunnel syndrome, arthritis, narcolepsy, and depression" (R. 89).  On March 28, 2008, the SSA denied her application (R. 90), and Argo requested a hearing before the ALJ, which occurred on September 23, 2009.  (R. 55-86).  On October 6, 2009, the ALJ denied Argo's claims (R. 13-27), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-3).  Argo then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3).  Doc. 1.  *See also* doc. 9, at 2.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not

supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV.  The ALJ's Decision

As a threshold matter, the court notes that the ALJ properly applied the five step analysis.  Initially, the ALJ determined that Argo had not engaged in substantial gainful activity since November 2, 2007, and therefore met Step One. (R. 18).  The ALJ also acknowledged that Argo's severe impairments of fibromyalgia, degenerative joint disease (neck and lower back), hypertension, diabetes mellitus, diabetic neuropathy, obesity, and depression met Step Two.  *Id*. The ALJ proceeded to the next step and found that Argo did not satisfy Step Three since her impairments or combination of impairments neither met nor equaled the requirements for any listed impairment.  (R. 20).  Although she answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where she determined that Argo had the residual functional capacity ("RFC") to

> [P]erform sedentary work . . . except the claimant requires a sit/stand option with an ability to rotate at least every 30 minutes; only occasional overhead reaching and no pushing or pulling; simple, routine, and repetitive tasks with no production rate or pace requirements; and only occasional interaction with the public and co-workers.

(R. 21).  Further, the ALJ held that Argo could not perform any of her past relevant work.  (R. 25).  Lastly, in Step Five, the ALJ considered Argo's age, education, work experience, RFC, and impairments, and determined that there are

a significant number of jobs in the national economy that Argo can perform.  (R. 26).  Because the ALJ answered Step Five in the negative, the ALJ determined that Argo is not disabled.  (R. 27).  *See also McDaniel*, 800 F.2d at 1030.  As it relates to the pain standard, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (R. 23).

## V.  Analysis

The court turns now to Argo's two contentions of error—that the ALJ (1) failed to properly consider her impairments in combination and (2) failed to properly consider the medical evidence of record.  *See* doc. 9.  The court will address each in turn.

A.    *Impairments in Combination*

Argo argues that, while the "ALJ recites the evidence documenting [her] impairments, . . . nowhere in her[] decision does [s]he properly consider these impairments in combination."  Doc. 9, at 5.  Accordingly, she concludes, the ALJ's decision is not "based upon substantial evidence."  *Id.* at 6.  The court finds Argo's contention unpersuasive because the ALJ clearly reviewed Argo's entire medical history and found that "no treating, examining or reviewing physician has suggested the existence of any impairment or combination of impairments which

would meet or medically equal the criteria of any listed impairment."  (R. 20).
Indeed, the ALJ discussed each of Argo's impairments but found the subjectively
alleged intensity, persistence, and limiting effects of these impairments not
supported by objective medical evidence.

      As it relates to her impairments, Argo testified at the administrative hearing
that she has "a lot of problems with [her] back, and [her] legs, and stuff.  And it's
hard to sit down and bend to do the job that I done.  It's hard to sit, certain areas,
and I don't know how long I'll be able to sit in a chair, or I have to go lay down."
(R. 63-64).  Argo maintains that she can stand for approximately 20-30 minutes
before pain ensues, and that she can sit for 30-45 minutes before she needs to
move around, but getting up to walk after sitting helps alleviate the pain.  (R. 67).
As it relates to fibromyalgia, Argo provided that "[i]t's just like different pressure
points all over your body hurts.  It's sometimes like a toothache, and sometimes
it's harder than that, you can hardly catch a breath.  And I have good days, too,
where I don't hurt as bad, I can sit and do things.  And there are some days that I
have to lay down more than I am up."  (R. 64).  Generally, Argo states that she has
four of these "bad days" a week where she has "to go lay down for two hours at a
time."  (R. 65).  With her back pain, Argo asserts that "it feels like somebody's got
a wrench, it's twisting around like a vice grip.  Like somebody's got a hold of it at
one end, the other, and they're just turning it around."  (R. 66).  Argo takes pain
medications which makes "moving around" more tolerable, and Argo suffers from
no side effects from these medications.  (R. 68).  Argo also stated that she has

"problems lifting [her] arms up over [her] head" and due to neck disc problems, she "can't lift [her] head back or forward, down far, because it feels like the back of [her] head is nearly going to explode." (R. 77).

Moreover, Argo describes her diabetic neuropathy symptoms as "my feet and my legs from the knees down are numb. And then, at times, it feels like somebody's got a sharp needle, or I'd say a knife, jabbing in at different times." (R. 68). However, propping her feet up with a pillow between her legs helps this pain. (R. 69). Argo also provides that she has trouble walking short distances, and that she uses an inhaler pump as needed for shortness of breath. (R. 70-71). Accordingly, Argo utilizes a motorized wheelchair at times. (R. 76-77). Argo further testified that her average blood sugar rating is between 800-900, and "[e]ven with the insulin [she's] on, it never goes under 300." (R. 69). In addition, Argo takes medication for high blood pressure, and while she suffers from some pain with elevated blood pressure levels, the medicine generally controls these levels. (R. 70). Furthermore, although Argo took no medication for depression at the time of the hearing, Argo complains that she suffers from depression, that she generally wants to keep to herself, and that she does not want to get out of bed unless she has to get out of bed. (R. 72). Finally, Argo provides that she suffers from "obstructive sleep apnea" and "restless leg syndrome," but she does not utilize a CPAP machine and takes some medication for her "legs jerk[ing] during the night." (R. 78-79).

As it relates to Argo's daily routine, she states that she typically wakes up

around 10:00 a.m. and goes to bed between 10:00 and 11:00 p.m.  She tries to do laundry, fixes something to eat, and reads.  (R. 73).  Argo's daughter generally cleans the house and helps with grocery shopping.  Her other children also visit or call.  (R. 74).  Argo owns a dog and is able to take care of his normal daily needs. (R. 75).

In considering Argo's impairments in combination, the ALJ found many purported pain allegations exaggerated and not reasonably supported by the objective medical evidence in the record.  First, the ALJ determined that Argo overstated her blood sugar levels and diabetic condition.  (R. 24).  Indeed, while Argo stated at the administrative hearing that she averaged a blood sugar level between 800-900, a physician found her levels between 300-500 in March 2008. (R. 256).  In October 2008, Argo claimed blood sugar levels over 400 to her treating physician.  (R. 322).  Argo also reported levels between 300-400 in June 2009 to her endocrinologist, and tested to a non-fasting blood sugar level of 375 at this physical examination.  (R. 307-08).  Thus, while the endocrinologist found Argo "significantly insulin resistant," she still maintained levels between 300-400. (R. 308).  Moreover, Argo told her physician on August 11, 2009 that "her sugars have been o-k."  (R. 314).  Accordingly, the medical evidence warrants the ALJ's decision to discredit Argo's testimony regarding her severe diabetic condition and impairment.

As it relates to Argo's obesity, the ALJ concluded that "claimant's physical examinations are basically normal and that the claimant alleges no specific

limitations due to her obesity." (R. 24). The record evidence supports this conclusion as all of Argo's "symptoms" arise from the other impairments, and her September 2008 to August 2009 physical evaluations do indeed reveal normal findings. (R. 314-323). Moreover, Argo's medical records offer no indication of disabling impairments created by her obesity. (R. 206-36, 290-323). Similarly, the ALJ found that medications largely controlled Argo's "severe" hypertension. (R. 25). And indeed, Argo's treatment notes from September 2008 to August 2009 reveal no indication of problems with hypertension. (R. 314-323). The disability examiner also found that with medication Argo's hypertension is "slightly well controlled." (R. 256).

Furthermore, the ALJ found Argo's purported pain levels exaggerated based on the medical records. The ALJ concluded that "the latest treatment notes from Dr. Klaiss between September 2008 and August 2009 reflect complaints of 'back discomfort' in October 2008 and observations of decreased sensation in the feet, but otherwise they reflect normal findings of the back and gait on physical exam with no other back complaints and no neck complaints noted." (R. 24). Argo's "Progress Notes" in September 2008 reveal some generic pain allegations, but normal physical exam findings (R. 323); allegations of back discomfort and night sweats in October 2008, but Argo had not taken pain medication for over two weeks, and again, she had normal physical exam findings (R. 321); complaints of headache and decreased sensation in the feet in December 2008, but no other pain allegations and normal physical findings (R. 320); and finally, in August 2009,

Argo had headaches, dizziness, and a "burning and somewhat decreased sensation" in her feet, but still exhibited normal findings in her physical exam.  (R. 315).  Thus, while Argo suffers from osteoarthritis in both knees (R. 301), the medical record as a whole supports the ALJ's conclusion.  Given this medical evidence, a reasonable person could certainly accept the finding that Argo's "alleged degree of pain from her medically determinable impairments is not credible to the extent she alleges an inability to perform within the parameters of the . . . residual functional capacity."  (R. 24).  Perhaps more importantly, by focusing on these comprehensive "Progress Reports" prepared by Argo's physician, the ALJ reasonably considered the medical impairments *in combination* as it relates to the overall pain levels Argo suffered.

Moreover, while addressing Argo's pain levels and impairment symptoms in combination, the ALJ also noted that "given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by her treating physician.  A review of the record, however, reveals no restrictions recommended by the treating physician."  (R. 25).  Based on a thorough review of Argo's medical records, the court agrees with the ALJ.  In other words, there is substantial evidence—or lack thereof—for the ALJ's finding that the objective medical record offers no support for Argo's subjective pain severity level.  Additionally, the ALJ properly discredited the "complaints of disabling symptoms and limitations" because Argo's psychiatric progress reports from March 2009 reveal that she needed to

"return items to stores from impulsive spending sprees," and that she babysat her grandson.  (R. 24, 290).

The ALJ also found that Argo suffers from some depression, but cited Argo's November 5, 2007 physician notes that Argo is "less depressed" and testimony that she no longer takes medication for depression  (R. 25, 72, 210). The ALJ further stated that "the record generally reflects situational depression with family problems at times but otherwise primarily physical limitations that affect the claimant's ability to work."  (R. 25).  Argo's counseling notes confirm the ALJ's finding of depression in May 2007 (R. 228, 230, 231), June 2007 (R. 224),  September 2007 (R. 213, 215), October 2007 (R. 211), July 2008 (R. 294), and March 2009 (R. 290, 292).  Indeed, Argo's March 2008 psychological evaluation provides that she suffers from "mild to moderate symptoms of depression."  (R. 252).  However, Argo apparently made no subjective depression complaints in August 2009 or April 2009 (R. 315, 317), and indeed, Argo no longer takes medication for depression (R. 72).   Thus, the ALJ properly considered Argo's depression symptoms, and the substantial evidence supports the AJL's conclusion of mild depression that is not disabling.

Finally, in addition to analyzing the objective medical evidence of Argo's impairments in relation to Argo's subjective allegations of severity and pain, the ALJ stated that another "factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive demeanor while testifying at the hearing.  The claimant walked into the hearing without any display of pain or

other abnormality.  Also, she sat for the entirety of the hearing without fidgeting or changing position."  (R. 25).  The ALJ noted however that "this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity."  (R. 25).

In closing, while Argo correctly contends that "[w]hen 'a claimant has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling,'" *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984)), by exhaustively evaluating each of Argo's alleged sources of pain or impairment—and finding that the objective medical evidence fails to support the severity and intensity of these allegations—the ALJ sufficiently considered Argo's impairments *in combination*.  Indeed, the Eleventh Circuit in *Walker* found the ALJ in error because he "made specific reference only to [claimant's] left ankle and obesity.  The ALJ's findings do not mention [claimant's] arthralgias in the right knee, phlebitis in the right arm, hypertension, gastrointestional problems, or asthma, except to the extent that these 'subjectiv[e] complain[t]s do not establish disabling pain.'" *Id.*  Conversely, here, the ALJ discussed and analyzed each of Argo's medical impairments—fibromyalgia, obesity, diabetic condition, hypertension, back/neck pain, osteoarthritis in leg/foot, and depression—and reached its conclusion based on all of these impairments.  (R. 24-25).  *See also Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) ("The

ALJ did not ignore appellant's subjective complaints of pain; she simply found them not credible to prove disabling pain."); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (citing *Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir.1991), for the proposition "that the following statement by an ALJ evidenced consideration of the combined effect of a claimant's impairments: while '[the claimant] has severe residuals of an injury to the left heel and multiple surgeries on that area, [the claimant does not have] an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.'") (alteration in original).

B.   *Medical Evidence of Record*

Argo also contends that the ALJ improperly exercised "sit and squirm jurisprudence" by considering Argo's demeanor at the hearing when discrediting her allegations of disabling pain.  Doc. 9, at 6-7 (citing R. 25).  The court disagrees because the ALJ discussed Argo's demeanor at the administrative hearing as one factor of many that contradicted her complaints of disabling impairments.  (R. 25).  The Eleventh Circuit defines "sit and squirm jurisprudence" as when "an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing.  If the claimant falls short of the index, the claim is denied." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).  However, here, there is no indication that the ALJ "subjectively arrive[d] at an index of traits;" rather, the ALJ found insufficient objective medical evidence supporting Argo's alleged

disabling impairments or pain levels and added Argo's demeanor as an additional factor in the findings. Accordingly, the ALJ's approach comports with the Eleventh Circuit's decision in *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987), where the court found *no error* in "[t]he ALJ [] not[ing] [claimant's] demeanor but [] not discredit[ing] [claimant's] testimony solely on this basis." *See also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (upholding ALJ's decision where "ALJ systematically articulated his reasons for rejecting [claimant's] subjective complaints of pain"). Thus, by considering Argo's objective medical records in conjunction with properly discredited subjective pain testimony, the court finds no error in the ALJ's comments about Argo's demeanor at the ALJ hearing.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Argo is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. The final decision of the Commissioner is, therefore, **AFFIRMED**. A separate order in accordance with this memorandum of decision will be entered.

Done the 23rd day of April, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE